UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL W.,

    Plaintiff,

v.                                                       Hon. Sally J. Berens

COMMISSIONER OF                 Case No. 1:24-cv-277
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **reverse** the Commissioner's decision and **remand** the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed a prior application for DIB on February 6, 2018, alleging a disability onset date of July 17, 2017. Following a hearing before an Administrative Law Judge (ALJ), his application was denied in a written decision issued on January 28, 2020. (PageID.94-105.) The Appeals Council denied Plaintiff's request for review on August 17, 2020. (PageID.109-11.) Plaintiff did not seek judicial review of the decision.

On January 11, 2022, Plaintiff protectively filed applications for DIB and SSI, alleging that he became disabled as of July 17, 2017, due to blindness or low vision, a shoulder labral tear injury that was poorly repaired, post-traumatic stress disorder, anxiety, borderline personality disorder, impaired hearing, disc degeneration and bulging disc in the neck and left shoulder, and right leg numbness. (PageID.115, 128, 265–78, 339–45.) He later amended his alleged onset date to January 14, 2021. (PageID.41.) Plaintiff was age 44 both at the time of his amended alleged onset date and when he filed his applications. (PageID.115.) He had completed high school and one year of college, and his past work included Assembly Press Operator, Racker, Injection Molding Machine Off-Bearer, Plating Equipment Operator, Grinder, Set-up Drill Operator, and General Laborer. (PageID.103.) Plaintiff's applications were denied initially and upon reconsideration, and he requested a hearing before an ALJ.

ALJ Paul W. Jones conducted a hearing on January 25, 2023, and received testimony from Plaintiff and James Breen, an impartial vocational expert (VE). (PageID.60–89.) On March 1, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled from his amended alleged onset date through the date of the decision. (PageID.41–53.) The Appeals Council denied Plaintiff's request for review on January 17, 2024 (PageID.22–24), making ALJ Jones's March 1, 2023 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on March 1, 2024.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his or her residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

the procedure, the point at which his RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through December 31, 2022, and had not engaged in substantial gainful activity since his amended alleged onset date of January 14, 2021, the ALJ found that Plaintiff suffered from severe impairments of obesity; bilateral hearing loss; right eye blindness; left shoulder degenerative joint disease status-post labrum tear; depression/anxiety; and personality disorder. (PageID.43.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. As for physical impairments, the ALJ considered Listings 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root), 1.18 (Abnormality of a Major Joint in Any Extremity), 2.02, 2.03, and 2.04 (Loss of Vision), and 2.10 (Hearing Loss), but found that Plaintiff's impairments failed to satisfy their requirements. (PageID.44–45.) As for mental impairments, the ALJ considered Listings 12.03 and 12.04. For these listings, the ALJ considered both the "paragraph B" and "paragraph C" criteria. Under paragraph B, Plaintiff was required to prove one extreme limitation or two marked limitations in the following areas to meet the listing:

    1. Understanding, remembering, or applying information;

    2. Interacting with others;

    3. Concentrating, persisting, or maintaining pace;

    4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(B), 12.04(B). The ALJ found that Plaintiff was mildly limited in the areas of understanding, remembering, or applying information and adapting

or managing oneself and moderately limited in the areas of interacting with others and concentrating, persisting, or maintaining pace. (PageID.46.)

The ALJ then determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [He] can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; only occasionally overhead reach with his left arm; with no exposure to hazards; and exposure to only moderate noise; in occupations requiring no right eye vision or depth perception; in simple, routine, repetitive work; with only occasional public or supervisor interaction.

(PageID.47.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work (PageID.51), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of Office Helper, Mail Clerk, and Routing Clerk, approximately 347,000 of which existed in the national economy. (PageID.52.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (noting that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff had not been disabled during the period at issue.

**Discussion**

Plaintiff raises one error in his appeal: the decision violates the rules for considering medical opinions, disregarding the opinions of the treating therapist, and wrongly denying benefits. (ECF No. 10 at PageID.1488.) This argument pertains to the Statement in Support of Application for Social Security Benefits that Plaintiff's representative prepared based on input

6

from Plaintiff's treating therapist, Jennifer Higgins, which Ms. Higgins then reviewed and signed. (PageID.1478-80.).

In articulating Plaintiff's RFC, the ALJ evaluated the opinion evidence pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors but is not required to explain how the remaining factors were considered. *See* 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

The ALJ is to conduct this analysis with regard to all medical source opinions and prior administrative findings. The former rule, well-known as "the treating physician rule[,] no longer

7

applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

In her statement, Ms. Higgins provides the background of Plaintiff's treatment at Barry County Community Mental Health Authority since July 25, 2017, including her treatment of Plaintiff in therapy sessions since March 2022. She also discusses Plaintiff's diagnoses and symptoms and her assessment of the "paragraph B" factors, or the four areas of mental functioning, which she expounds on through examples of Plaintiff's limitations. The ALJ evaluated Ms. Higgins' statement as follows :

> I also considered the Statement in Support of Application for Social Security Disability Benefits prepared by claimant's representative based on her conversation with claimant's mental health counselor and which the counselor reviewed and signed (Exhibit B34F). The counselor indicated marked or extreme limitations in all four areas of mental functioning. Such significant limitations are not consistent with the evidence as a whole, which documents claimant's ability to care for himself and his elderly uncle as well as perform activities of daily living or supported by the counselor's own treatment notes, which generally reflect normal mental status examinations, claimant's progress and positive response to therapy, and improved mood with medication. Accordingly, I do not find this Statement persuasive.

(PageID.51.)

Plaintiff contends that the ALJ erred in several respects. First, Plaintiff argues that, while the ALJ addressed Ms. Higgins' opinions as to the "paragraph B" factors, he failed to address specific workplace limitations set forth in her opinion, including that Plaintiff would have difficulty in executing simple, routine, and repetitive instruction and tasks due to problems with motivation and concentration; Plaintiff would be unable to maintain concentration for more than 30–35 minutes at a time; and Plaintiff would be unable to maintain regular work attendance. (ECF No. 10 at PageID.1498.) Defendant responds that, while the ALJ's discussion was limited to Ms. Higgins's opinion of the "paragraph B" factors, the ALJ cited the entire exhibit containing the opinion and referenced Ms. Higgins' assessment of "significant limitations." Defendant further notes that Ms. Higgins connected the examples and limitations she cited to her "paragraph B" opinions regarding marked and extreme limitations she opined through the phrase, "[a]s . . . further explained below." (ECF No. 11 at PageID.1507.) Plaintiff replies that the phrase "[s]uch significant limitations" refers only to the "paragraph B" factors and not to the other limitations in Ms. Higgins's opinion. Plaintiff further asserts that based on Defendant's argument, the ALJ should have detailed which areas of mental functioning were "significant." (ECF No. 12 at PageID.1517.)

Considering the ALJ's decision and Ms. Higgins' opinion together, the ALJ's evaluation can reasonably be read to encompass all of the workplace limitations set forth in the opinion. While it is true that the ALJ's reference to "significant limitations" refers to the opined "marked or extreme limitations in all four areas of mental functioning," the ALJ found the "Statement" itself unpersuasive. As noted, the Statement is structured such that the limitations and examples—as "further explained below"—are cited to elaborate on Ms. Higgins's opinions

9

regarding the "paragraph B" factors. Viewed through this lens, the ALJ's evaluation of the "Statement" as unpersuasive would also include the workplace limitations Ms. Higgins opined. As one court has observed, "an ALJ is not required to recite every limitation in an opinion, especially when the ALJ found the entire opinion to be not persuasive." *Bovenzi v. Comm'r of Soc. Sec.*, No. 1:20-CV-185, 2021 WL 1554566, at *11 (N.D. Ohio Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 1206466 (N.D. Ohio Mar. 31, 2021) (citing *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *9 (N.D. Ohio Feb. 21, 2019), and *Purtty v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-1204, 2014 WL 3510991, at *9 (N.D. Ohio July 10, 2014)); *see also Ballis v. Berryhill*, No. 5:17-CV-403, 2018 WL 3121620, at *10 (N.D. Ohio Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1531234 (N.D. Ohio Mar. 29, 2018) ("The ALJ determined that Dr. Neely's opinions were not consistent with the medical evidence, supported this conclusion with citations to the record, and was not required to specifically address every item considered in the opinions.").[2] Thus, the Court finds no error in the ALJ's failure to discuss all of the limitations set forth in the opinion.

Plaintiff also contends that the ALJ's discussion of the supportability and consistency factors was flawed. Regarding supportability, the ALJ found Ms. Higgins's opinions unsupported by her own treatment notes, which "generally" reflected normal mental status examinations, progress and positive response to therapy, and improved mood with medication. (PageID.51.) While Plaintiff concedes that he reported improved symptoms with medication and

---

[2] Defendant provides grounds for the ALJ's rejection of the workplace limitations. (ECF No. 11 at PageID.1507–08.) Because the ALJ never mentioned these reasons, the Court may not consider them on appeal. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's post hoc rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

made progress with therapy (PageID.1015 (noting that increase in Zoloft dosage "has helped significantly"); 1027 (reporting that therapy "was helpful"); 1029 (Ms. Higgins's report of "good progress" in that day's session and Plaintiff's report of stabilized mood, improved symptoms with medication increase, and improved ability to work on negative thought patterns); 1048 (reporting feeling more stable regarding his mood after restarting Zoloft); 1050 (reporting that Plaintiff responded well to advice on reframing negative thoughts and Plaintiff's belief that therapy was helpful); 1446 (noting "good progress in treatment and response to interventions")), he notes other evidence in the record showing that he continued to report difficulties with his mood and bad days or weeks, notwithstanding his reports of improvement or feeling that he was doing well. (PageID.1007, 1107, 1446.) Plaintiff contends that the ALJ ignored this evidence supporting disabling mental limitations. Likewise, Plaintiff contends that, in spite of describing mental status examinations as "generally" normal, the ALJ failed to cite abnormal findings, including that Plaintiff presented with a flat affect, a sad/depressed mood, and impaired judgment on one occasion and with a sad/depressed mood on another. (PageID.1020, 1036–37.)

  Contrary to Plaintiff's assertion, the ALJ did not mischaracterize the record or ignore evidence that might have supported mental limitations. The ALJ properly characterized Ms. Higgins's mental status findings as "generally" normal, as her treatment notes routinely showed that Plaintiff presented with unremarkable mood/affect, thought process/orientation, and behavior/functioning. (PageID.1006, 1015, 1026, 1028, , 10432, 1045, 1047, 1049, 1063, 1097, 1099, 1106, 1108, 1114, 1119.) The ALJ further observed that treatment records routinely indicated good attention and concentration. (PageID.46, 1020, 1037, 1089, 1185, 1349.) Moreover, rather than ignoring contrary evidence, the ALJ cited Plaintiff's testimony and reports of loss of interest in things he used to enjoy and an immense sense of dread every day, general

11

mistrust of others, self-isolation, difficulty with concentration and completing tasks, fleeting thoughts of suicide, difficulty with motivation and productivity, and feelings of worthlessness or being a bad person. (PageID.46, 48–49.) The ALJ also observed that Plaintiff's depressive symptoms "appear[ed] to fluctuate depending upon the nature of situational stressors." (PageID.49.) Nor did the ALJ find, as Plaintiff suggests, that the evidence of progress or improvement showed that his "severe functional limitations have disappeared." (ECF No. 10 at PageID.1499.) Rather, the ALJ recognized that Plaintiff had severe mental impairments that could be accommodated by limiting him to simple, routine, repetitive work with occasional social contact. (PageID.50.)

Plaintiff also contends the ALJ erred in evaluating the consistency factor. The ALJ found Ms. Higgins's significant limitations inconsistent with the evidence as a whole, which demonstrated Plaintiff's ability to care for himself and his elderly uncle and perform activities of daily living. (PageID.51.) Plaintiff cared for his uncle by cooking, cleaning, managing his bills, protecting him from online scams, and feeding him. (PageID.46, 66, 411.) Plaintiff's reported activities included playing online video games, washing dishes, driving, preparing meals, shopping in stores for groceries, mowing the lawn, making small repairs, doing laundry and general cleaning, managing finances, taking daily walks, and attending medical appointments. Plaintiff also reported the ability to pay attention for hours. (PageID.50, 66, 76, 315–18.)

Plaintiff contends that the ALJ's consistency analysis was flawed because these basic tasks are not inconsistent with Ms. Higgins' limitations and do not evince Plaintiff's ability to perform full-time work, and the decision exaggerates Plaintiff's level of functioning. (ECF No. 10 at PageID.1500–01.) The Court finds no basis to conclude that the ALJ exaggerated Plaintiff's level of functioning or ignored negative information about Plaintiff's daily activities.

12

As set forth above, the ALJ discussed the evidence—both favorable and unfavorable—pertaining to Plaintiff's claimed disability.

Nonetheless, the Court finds that the ALJ's consistency analysis fails to comply with the regulation's articulation requirements in a manner that allows the claimant to understand the ALJ's decision and the Court to trace the ALJ's reasoning and assess its validity. That is, while the ALJ found Plaintiff's daily activities and care for his uncle and himself inconsistent with Ms. Higgins's opinion, he failed to explain what about her opined limitations was inconsistent with Plaintiff's activities. In other words, the ALJ failed to connect his conclusion to the evidence. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017) (ALJ decision must provide accurate and logical bridge between evidence and result and must permit meaningful review). The ALJ may not simply leave it to the Court to speculate about the reasons for the purported inconsistency. Consequently, the ALJ's discussion does not permit meaningful appellate review. Therefore, remand is warranted for the ALJ to conduct a proper assessment of the consistency of Ms. Higgins's opinion with other evidence in the record. *See Bauer v. Saul*, No. 19-11570, 2020 WL 6389829, at *6–7 (E.D. Mich. Aug. 31, 2020), *report and recommendation adopted*, 2020 WL 6382714 (E.D. Mich. Oct. 30, 2020) (remand was proper to allow the ALJ to explain why the plaintiff's reported daily activities of doing light housework, preparing meals, grocery shopping, occasionally going out to eat, and caring for her dog were inconsistent with the plaintiff's complaints of pain and limitations).

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed and remanded** for further factual findings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An order consistent with this opinion will enter.

Dated: December 11, 2024               /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       U.S. Magistrate Judge